RETAIL, WHOLESALE AND DEPARTMENT STORE UNION LOCAL 1034, AFL–CIO, Petitioner/Plaintiff,

v.

DOXSEE FOOD CORPORATION and Borden, Inc., Respondents/Defendants.

Civ. A. No. 86–605 MMS.

United States District Court, D. Delaware.

Dec. 31, 1986.

Ira Silverstein, of Spear, Wilderman, Sigmond, Borish, Endy and Silverstein, Philadelphia, Pa., for petitioner/plaintiff; Joseph Benson, Wilmington, Del., of counsel.

Michael Kraemer, James King, and Gail Ragsdale, of White & Williams, Philadelphia, Pa., for respondents/defendants; David J. Ferry, Jr., of Ahern & Ferry, Wilmington, Del., of counsel.

MURRAY M. SCHWARTZ, Chief Judge.

## I. FACTS

Petitioner Retail, Wholesale, and Department Store Union Local 1034 ("Local 1034") is the exclusive representative of a unit of approximately 100 employees of respondent Doxsee Food Corporation at its Lewes, Delaware clam processing facility. A collective bargaining agreement between Local 1034 and Doxsee existed at all times relevant to this action. The agreement contains a grievance and arbitration provision covering "[a]ll differences, disputes, complaints, and grievances of whatever nature that may arise between the Union and the Company."

In August 1986, respondent Borden, Inc., purchased the outstanding shares of Doxsee and began to operate Doxsee as a wholly owned subsidiary. On October 24, 1986, Borden closed the Doxsee plant in Lewes as part of a plan to transfer the Doxsee

clam processing work to a plant in Maine owned by Snow's, a division of Borden. A representative of Borden and Doxsee presented a proposed package of severance benefits to Local 1034 on October 27, stating that the proposal would be withdrawn if not accepted by 3:00 p.m. on October 28. On October 30, the employees represented by Local 1034 voted to reject the severance offer.

Local 1034 instead elected to pursue through the grievance and arbitration process the contractual claims that would have been waived under the proposed severance package. In particular, the union asserts that Doxsee's conduct is contracting or subcontracting resulting in the loss of jobs, in violation of Article III, section 1 of the collective bargaining agreement, which provides:

> 1. Except as specifically limited by this Agreement, the Company reserves the exclusive right to manage and operate its business as it deems fit including, without limitation, to schedule work, to enlarge, expand, curtail, contract or subcontract (but only if such contracting or subcontracting is required as a temporary emergency measure or if it will not result in the loss of jobs of any employee who has then completed his probationary period), or cease its operations or any part thereof, and to hire, discharge, discipline, promote, transfer, or lay off its employees.

Doxsee indicated that it was not interested in arbitrating the dispute. On October 30, representatives of Local 1034 observed machinery being dismantled and removed from the Lewes plant.

On October 31, Local 1034 filed an action for injunctive relief in this Court, designated as C.A. No. 86–515, which culminated in a settlement agreement between the parties. Pursuant to the agreement, Local 1034 filed its arbitration demand on the claim that Doxsee violated the subcontracting provisions of Article III. Doxsee agreed "that said claim is arbitrable and, further, agrees to cooperate in promptly processing the grievance to arbitration."

Moreover, Doxsee agreed not to remove from the Lewes plant any equipment, with specified exceptions, for 60 days commencing November 5, 1986.

Although the parties have chosen an arbitrator, no hearing has been scheduled on the union's contract claim. Doxsee notified Local 1034 by letter on December 10 that certain additional equipment would be removed from the Lewes plant when the 60–day period expires on January 5, 1987. Local 1034 therefore has filed a fresh lawsuit requesting an injunction to maintain the status quo at the Lewes plant pending arbitration. The evidentiary hearing required by the Norris-LaGuardia Act, 29 U.S.C. § 107, was held on December 29, 1986. For the reasons that follow, the Court will deny the union's petition for a temporary restraining order, which the parties agree should be considered an application for a preliminary injunction.

## II. DISCUSSION

The Norris-LaGuardia Act, 29 U.S.C. §§ 101–15, broadly prohibits federal court injunctions in labor disputes, thus preventing the federal courts from interfering with economic struggles between employees and their employers. The Supreme Court has created an exception to this general prohibition, however, where the involvement of the federal courts is necessary to encourage and promote the voluntary resolution of labor disputes through arbitration. *See Boys Markets v. Retail Clerks Union Local 770*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970). A *Boys Markets* injunction against employer conduct is appropriate only in narrow circumstances. First, the underlying dispute must be subject to mandatory arbitration under the collective bargaining agreement. *Buffalo Forge Co. v. United Steelworkers*, 428 U.S. 397, 96 S.Ct. 3141, 49 L.Ed.2d 1022 (1976). Second, the employer conduct the union seeks to enjoin must threaten or frustrate the arbitral process agreed to by the parties. *Nursing Home & Hospital Union No. 434 v. Sky Vue Terrace*, 759 F.2d 1094, 1098 (3d Cir.1985); *United*

*Steelworkers v. Fort Pitt Steel Casting,* 598 F.2d 1273, 1282 (3d Cir.1979). Finally, the union must satisfy the traditional requirements for injunctive relief by demonstrating a probability of success on the merits, irreparable injury if the injunction is denied, and that the balance of hardships favors the injunction. *Sky Vue,* 759 F.2d at 1098.

### A.  Arbitrability

The issue of arbitrability is "a matter to be determined by the courts on the basis of the contract entered into by the parties." *Atkinson v. Sinclair Refining Co.,* 370 U.S. 238, 241, 82 S.Ct. 1318, 1320, 8 L.Ed.2d 462 (1962). Because of the strong federal policy in favor of arbitration, however, "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960).

The collective bargaining agreement between Local 1034 and Doxsee contains a broad "all disputes" arbitration clause. This clause, however, must be read in conjunction with Article III of the agreement, which reserves exclusively to management the right to "cease ... operations or any part thereof." Local 1034 attempts to raise an arbitrable issue by characterizing the closing of the Lewes plant as subcontracting by Doxsee. Unlike management's right to cease operations, management's right to subcontract under Article III is limited to cases of temporary necessity or where no loss of jobs will result.

It is doubtful that a plant closing and transfer of work to another subsidiary or division of the parent corporation can on the facts of this case fairly be described as subcontracting. If it cannot, the dispute over the closing of the Lewes plant is not arbitrable. *See UAW v. Lester Engineering Co.,* 718 F.2d 818 (6th Cir.1983). The settlement agreement in C.A. No. 86–515 expressly provides that the union's claim is arbitrable, however, and the parties have in fact submitted the dispute to arbitration.[1] The Court will therefore assume that the requirement of arbitrability is satisfied.

### B.  Employer Conduct

Local 1034 must show that a *Boys Markets* injunction is necessary to prevent conduct by Doxsee that threatens or frustrates arbitration. In other words, the union's petition may be granted only if the removal of equipment from the Lewes plant would make a later arbitral award in the union's favor "a hollow formality" because the award could not substantially restore the status quo. *United Steelworkers v. Fort Pitt Steel Casting,* 598 F.2d 1273, 1282 (3d Cir.1979). Local 1034 claims that the removal of equipment to the Snow's plant in Maine would frustrate any reopening remedy imposed by the arbitrator and would render unenforceable any monetary award.[2]

Local 1034 relies heavily on *Nursing Home & Hospital Union No. 434 v. Sky Vue Terrace,* 759 F.2d 1094 (3d Cir.1985), in which the Court of Appeals affirmed an order imposing a status quo injunction pending arbitration. In *Sky Vue,* the employer consummated a sale of all its physical assets and began to dissolve its corporate status. At the time of the injunction, the employer had distributed to its individual stockholders approximately two-thirds of the proceeds from the sale of its assets. The Court of Appeals agreed with the dis-

---

**1.** Local 1034 stated in oral argument that the effect of the settlement agreement is to modify or clarify the collective bargaining agreement so as to render arbitrable disputes of this type. Because the settlement agreement has not been ratified by the members of Local 1034, however, this assertion is highly dubious. The settlement agreement, at most, operates only as a waiver of objections to arbitrability for purposes of litigation concerning Doxsee's Lewes plant.

**2.** The parties agree that a reopening remedy is within the power of the arbitrator. *See Teamsters Union Local No. 115 v. DeSoto, Inc.,* 725 F.2d 931 (3d Cir.1984).

trict court that an injunction on any further distribution of proceeds was necessary to ensure that if the union prevailed at arbitration the employer would have sufficient assets to satisfy a damages award. *Id.* at 1096.

■ The instant case is distinguishable from *Sky Vue.* First, the record made in the evidentiary hearing indicates that Doxsee continues and will continue to exist as a separate corporate entity, with four other functioning and revenue-generating plants at various locations in the United States and Canada. A backpay or other monetary award would therefore be enforceable against Doxsee regardless of the disposition of the Lewes plant. Second, uncontroverted testimony at the evidentiary hearing established that 70 to 75 percent of the equipment formerly at the Lewes plant will remain even after the planned removals in January 1987, and that no plans exist to dispose of this remaining equipment or of the premises themselves.[3] This uncontroverted testimony also indicated that if the arbitrator imposed a reopening remedy, the plant could be restored to its former operating capacity within 60 days. The removal of equipment to the Snow's plant thus cannot be said to frustrate a reopening remedy.

For these reasons, Local 1034 has failed to establish that Doxsee's conduct threatens or frustrates the arbitral process, and the petition for injunctive relief must be denied.

## C. Traditional Requirements for Injunctive Relief

In addition to failing to establish that Doxsee's conduct is the kind of conduct a federal court may enjoin pending arbitration, Local 1034 has not demonstrated that each of the traditional equitable requirements for an injunction is satisfied. *See*

*Nursing Home & Hospital Union No. 434 v. Sky Vue Terrace,* 759 F.2d 1094, 1098 (3d Cir.1985). The union's petition must be denied for this reason as well.

First, Local 1034 must show that it has a probability of success before the arbitrator on the merits of its contract claim. Because of the need to avoid judicial intrusion on the arbitrator's function, "the union need only show that the position it takes is 'sufficiently sound to prevent the arbitration from being a futile endeavor.'" *Sky Vue,* 759 F.2d at 1098 n. 3 (citations omitted). The union here argues that the closing of the Lewes plant and the transfer of work to a division of Doxsee's parent corporation amounts to prohibited subcontracting within the meaning of Article III of the collective bargaining agreement.[4] Although courts have rejected similar contentions in determining whether a claim is arbitrable, *see UAW v. Lester Engineering Co.,* 718 F.2d 818 (6th Cir.1983), I cannot say that actually proceeding to arbitration on such a claim would be futile. Local 1034 has therefore shown a sufficient probability of success on the merits.

■ Second, Local 1034 must show that it will suffer irreparable injury if the Court denies the requested injunction. For purposes of a *Boys Markets* injunction, irreparable injury means both injury resulting from a breach of contract that would not be fully redressed by an arbitral award and frustration of the arbitral remedy by employer conduct. *See Local Lodge No. 1266 v. Panoramic Corp.,* 668 F.2d 276, 285–86 (7th Cir.1981). Because the arbitral award may consist of monetary damages, reopening the Lewes plant, or a combination of these remedies, Local 1034 cannot show that adequate compensation is unavailable if Doxsee is found to have breached the collective bargaining agreement.[5] Similar-

---

**3.** Although the amount of the remaining equipment was established, no evidence was given as to the value of this equipment.

**4.** In support of this argument, Local 1034 stresses the fact that the clam products that will be

produced by Snow's in Maine will continue to bear the Doxsee name.

**5.** The Court of Appeals for the Third Circuit has stated that for a preliminary injunction to issue, the requisite is that the feared injury or harm be irreparable—not merely serious or sub-

ly, for the reasons discussed above, Local 1034 has not demonstrated that the removal of equipment to the Snow's plant would frustrate or render unenforceable these arbitral remedies. Therefore, no irreparable injury exists to justify an injunction.

Finally, the balance of hardships on both sides must favor the injunction. The burden on Doxsee and Borden resulting from an injunction obviously consists of the idling of the equipment in the Lewes plant during the pendency of the arbitration. Local 1034 has not shown that this burden is outweighed by any burden or risk facing the employees if the injunction is denied and respondents are permitted to use the equipment. The balance of hardships, therefore, does not favor an injunction.

## III. CONCLUSION

For the foregoing reasons, the application of Local 1034 for a preliminary injunction will be denied.

stantial. "The word means that which cannot be repaired, retrieved, put down again, atoned for.... Grass that is cut down cannot be made to grow again; but the injury can be adequately atoned for in money. The result of the cases fixes this to be the rule: the injury must be of a peculiar nature, so that compensation in money cannot atone for it...." *Gause v. Perkins*, 3 Jones Eq. 177, 69 Am.Dec. 728 (1857). *A.O. Smith Corp. v. Federal Trade Comm'n*, 530 F.2d 515, 525 (3d Cir.1976).