**BORDEN, INC. T/A Doxsee Food, Plaintiff,**

v.

**AMERICAN ARBITRATION ASSOCIATION; Retail, Wholesale Department Store Union, Local 1034, AFL-CIO, Defendants.**

**Civ. A. No. 87-437 MMS.**

United States District Court, D. Delaware.

Jan. 15, 1988.

David J. Ferry, Jr. of Ahern & Ferry, Wilmington, Del. (Michael Kraemer of White & Williams, Philadelphia, Pa., of counsel), for plaintiff.

Joseph Benson, Wilmington, Del. (Ira Silverstein of Spear, Wilderman, Sigmond, Borish, Endy and Silverstein, Philadelphia, Pa., of counsel), for defendant Retail, Wholesale Dept. Store Union, Local 1034, AFL–CIO.

## OPINION

MURRAY M. SCHWARTZ, Chief Judge.

Borden, Inc. (formerly Doxsee Food Corporation), seeks a declaratory judgment from this Court that the issue of transfer of all work out of the bargaining unit is not arbitrable under its collective bargaining agreement with Local 1034 of the Retail Wholesale Department Store Union (Local 1034). Based upon the strong presumption of arbitrability, the contract's broad arbitration clause and the lack of exclusions from arbitration in the contract, the Court finds the parties agreed in the contract to arbitrate this dispute, and the issue is properly left to the decision of the arbitrator.

## I. BACKGROUND

Pursuant to its collective bargaining agreement with Doxsee Food Corporation (Doxsee/Local 1034 contract), Local 1034 filed a request for arbitration with the American Arbitration Association ("AAA") seeking to arbitrate the transfer of work out of the bargaining unit to another plant location. Borden filed a motion with this Court requesting a preliminary injunction restraining the AAA from arbitrating the dispute and a declaratory judgment that the collective bargaining agreement does not encompass arbitration of the current dispute.

The parties were previously before this Court in 1986 concerning the relocation of plaintiff's operations from its plant in Lewes, Delaware. *Retail, Wholesale and Department Store Union Local 1034 v. Doxsee Food Corporation*, 650 F.Supp. 861 (D.Del.1986). After Borden purchased Doxsee, Doxsee notified Local 1034 on October 24, 1986, that production was ceased at the Lewes plant as of that day and the work would be transferred to plants in

Maine and New Jersey. *Id.* at 862–63. As the exclusive bargaining agent, Local 1034 requested an injunction compelling Doxsee to arbitrate the closing of the plant as a violation of the subcontracting clause in the collective bargaining agreement. *Id.* at 863. The parties reached a settlement agreement in which Doxsee conceded the dispute was arbitrable and agreed both to cooperate so as to achieve arbitration in an expedited manner and to refrain from removing any equipment from the plant for a sixty-day period. *Id.* Local 1034 then filed a new request for injunction to prevent Doxsee from removing any equipment from the Lewes plant pending completion of the arbitration process. *Id.* Assuming the arbitrability of the dispute because of the parties' agreement, the Court refused to issue the injunction. *Id.* at 864, 866.

Several events have transpired since issuance of the Court's opinion in December 1986. Doxsee merged into Borden, Inc. Borden transferred the work formerly performed at the Lewes plant to a unionized plant in Cape May, New Jersey and a non-union plant in Pine Point, Maine. On the arbitration front, limiting his decision to the subcontracting clause, the arbitrator ruled that the closing of the Doxsee plant in Delaware did not violate the subcontracting clause of the collective bargaining agreement between Doxsee and Local 1034. Finally, the union submitted its second request for arbitration based upon different contract provisions.

The Court held a hearing on Borden's motion attended only by counsel for Borden and Local 1034. The AAA had notified the Court by letter that it did not intend to become involved in legal proceedings between Borden and Local 1034. At the hearing, Local 1034 declared it would not continue with the arbitration if the Court ruled the dispute was not arbitrable. As a consequence, plaintiff abandoned its request for an injunction against the AAA. In addition, Borden advised it was willing to arbitrate the company's alleged failure to offer employees at the Lewes plant work opportunities at the new location, as required by Article III, paragraph 4 of the collective bargaining agreement. Borden also agreed to arbitrate the union's claim that it violated Article VIII, paragraph 6 of the contract requiring notification to the union of any substantial reduction in the workforce, when it ceased operations at the Lewes plant without prior notification. The only remaining issue for the Court to determine is whether Local 1034 may compel Borden to arbitrate the question of whether the transfer of work out of the bargaining unit to the Maine and New Jersey plants violates the contract provisions.

The collective bargaining agreement signed by Doxsee and Local 1034 governs the arbitrability of the dispute over the closing of the Lewes plant and transfer of the work.[1] Article VII of the contract establishes a grievance procedure for "[a]ll differences, disputes, complaints and grievances *of whatever nature* that may arise between the Union and the Company," and provides that "[a]ll differences, disputes, complaints and grievances between the parties that shall not have been satisfactorily settled after following the [grievance] procedure hereinabove set forth shall, at the request of either party, be promptly submitted to arbitration" (emphasis added).[2]

The union argues the company is obligated to deal in good faith concerning the transfer of all work out of the bargaining

---

**1.** All references to contract provisions refer to the Collective Bargaining Agreement signed by Doxsee and Local 1034 on December 9, 1985, and in effect from that date until December 8, 1988 (the "collective bargaining agreement," or the "contract"). Borden has stipulated it is bound by the collective bargaining agreement.

**2.** In addition, the management rights clause in Article III states:

[e]xcept as specifically limited by this Agreement, the Company reserves the exclusive right to manage and operate its business as it deems fit including, without limitation, to schedule work, to enlarge, expand, curtail contract or subcontract (but only if such contracting or subcontracting is required as a temporary emergency measure or if it will not result in the loss of jobs of any employee who has then completed his probationary period), or cease its operations or any part thereof, and to hire, discharge, discipline, promote, transfer or lay off its employees.

unit based both on specific contract provisions and on an implication to be made from the contract as a whole. Local 1034 contends the union recognition clause in Article I establishes the company's obligation to deal in good faith and not arbitrarily destroy the bargaining unit.[3] Further, according to the union, the non-discrimination clause in Article II forbids a transfer of work from union to non-union facilities with an intent to avoid the union.[4] The union also maintains that the seniority provisions in Article VIII of the contract create an expectation by the union members of continued employment.[5]

Borden asserts ordering arbitration would destroy the final and binding nature of arbitration because the arbitrator already ruled on the effect of the plant closing. Borden goes on to argue that the union has provided no evidence of anti-union animus in the closing of the Lewes plant. The company also asserts the arbitration clause is limited to disputes arising out of the contract and that the union cannot create an arbitrable dispute by citing contract clauses irrelevant to the dispute.

## II. ANALYSIS

The United States Supreme Court and the United States Court of Appeals for the Third Circuit have established the judicial role in disputes over the meaning of collective bargaining agreements.

Unless the parties clearly provide otherwise, the Supreme Court has held the courts and not the arbitrator must determine which subjects the parties to the collective bargaining agreement agreed to arbitrate. *AT & T Technologies v. Communications Workers of America*, 475 U.S. 643, 649, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986) (citing *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960)). Finding the judicial role narrowly limited to the question of arbitrability, the Supreme Court declared that a court must be careful not to rule on the merits of the underlying claim. *AT & T Technologies*, 475 U.S. at 649, 106 S.Ct. at 1418. *See also Warrior & Gulf*, 363 U.S. at 582–83, 80 S.Ct. at 1352–53. The Supreme Court stated:

> Whether "arguable" or not, indeed even if it appears to the court to be frivolous, the union's claim that the employer has violated the collective bargaining agreement is to be decided, not by the court asked to order arbitration, but as the parties have agreed, by the arbitrator. "The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim. The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious."

*AT & T Technologies*, 475 U.S. at 649–50, 106 S.Ct. at 1418–19 (quoting *United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564, 568, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960)).

In *Warrior & Gulf*, the Court declared that the grievance-arbitration system formed "the very heart of the system of

---

3. Article I, paragraph 1 of the collective bargaining agreement reads:
   1. (a) The Company hereby recognizes the Union as the sole and exclusive bargaining agent for all production and maintenance employees at its plant located at Lewes, Delaware, including warehouse employees and receiving employees but excluding office clerical employees, watchmen, guards and supervisors, as defined in the Labor Management Relations Act, as amended.
   (b) The Company agrees that throughout the period of contractual relationship between these parties, no other organization will be recognized as the bargaining representative of any of the employees covered by this Agreement.

4. Article II of the collective bargaining agreement reads:
   Neither the Company nor the Union shall discriminate against any employee because of race, sex, color or creed, or membership in any organization or nonmembership in any organization not detrimental to the welfare of the United States.

5. Article VIII establishes a seniority system affecting layoffs and recalls following layoffs.

industrial self-government" and determined that the labor arbitrator brought special skills and expertise not possessed by the courts to the resolution of labor disputes. 363 U.S. at 581–82, 80 S.Ct. at 1352–53. Based on these considerations, the Court ruled that, "[a]part from matters that the parties specifically exclude, all of the questions on which the parties disagree must therefore come within the scope of the grievance and arbitration provisions of the collective agreement." *Id.* at 581, 80 S.Ct. at 1352. In *AT & T Technologies,* the Court reiterated the position that any doubts should be resolved in favor of arbitration, especially where the contract clause concerning arbitration contains broad, all-inclusive language. 475 U.S. at 650, 106 S.Ct. at 1419.[6]

In *E.M. Diagnostic Systems, Inc. v. Local 169, International Brotherhood of Teamsters,* 812 F.2d 91 (3d Cir.1987), the United States Court of Appeals for the Third Circuit established guidelines for implementing the Supreme Court decisions. The appellate court held that an analysis of arbitrability should focus on three issues: "(1) Does the present dispute come within the scope of the arbitration clause? (2) does any other provision of the contract expressly exclude this kind of dispute from arbitration? and (3) is there any other 'forceful evidence' indicating that the parties intended such an exclusion?" *Id.* at 95. The Third Circuit appellate court in *Morristown Daily Record, Inc. v. Graphic Communications Union, Local 8N,* 832 F.2d 31 (3d Cir.1987), determined that an accurate definition of the dispute facilitates the arbitrability decision. *Id.* at 33–35 (citing *AT & T Technologies,* 475 U.S. at 653–54, 106 S.Ct. at 1421–22 (Brennan, J., concurring) (issue before court must be defined so that question of arbitrability separate from merits of underlying dispute)).

■ The Court will look to the language used by the parties to define the dispute. Borden's motion for preliminary injunction refers to Local 1034's claim that the company "improperly transferred work out of the bargaining unit." In its letter to AAA on July 17, 1987, the union requested arbitration concerning "Doxsee's transfer of work out of the bargaining unit." The Court concludes the issue is twofold: one, whether the parties agreed in the contract to arbitrate the issue of transfer of work out of the bargaining unit even if that subject is not mentioned in the collective bargaining agreement; and two, if transfer of work is arbitrable, whether the parties agreed in the contract to arbitrate the existence of limits with respect to this transfer of all of the work out of the bargaining unit.

■ The Doxsee/Local 1034 contract has a broad arbitration clause. Article VII states that *"[a]ll differences, disputes, complaints* and *grievances* between the parties that shall not have been satisfactorily settled after following the [grievance] procedure hereinabove set forth shall, at the request of either party, be promptly submitted to arbitration" (emphasis added). The language of the arbitration clause is all-inclusive and excludes no subjects from arbitration.[7] Based upon the presumption of arbitrability, all areas not excluded from arbitration are deemed included. *See Warrior & Gulf,* 363 U.S. at 581, 80 S.Ct. at 1352. Therefore, because transfer of all work out of the bargaining unit is not excluded, it is within the scope of the arbitration clause in the collective bargaining

---

**6.** Reiterating the narrow role of the courts in reviewing arbitration decisions, the Court this term reinstated an arbitration award that had been reversed by the court of appeals based on a public policy against marijuana use. *United Paperworkers International Union v. Misco, Inc.,* —— U.S. ——, ——, 108 S.Ct. 364, 368, 98 L.Ed. 2d 286 (1987).

**7.** The arbitration clause does not limit issues to the collective bargaining agreement. However, Article VII, paragraph 4 limits the power of the arbitrator to interpreting and applying the con-

tract, and prohibits the arbitrator from altering, adding to, or deleting contract provisions. To allow the arbitrator to exceed the limits of the collective bargaining agreement would enable the arbitrator to create new terms of that contract. *See Lodge 802, International Brotherhood of Boilermakers v. Pennsylvania Shipbuilding Co.,* 835 F.2d 1045, 1046–47 (3d Cir.1987) (arbitrator may not set the wage rate for a new job classification). The arbitrator may not exceed the bounds of the contract in the award.

agreement. The issue of limits on the transfer of work out of the bargaining unit is properly left to the decision of the arbitrator. The first part of the *E.M. Diagnostic* test is satisfied.[8]

Second, the Court must examine whether this issue is expressly excluded from arbitration. The Court finds no part of the collective bargaining agreement which creates exclusions or limits the scope of the arbitration clause with regard to the transfer of work or cessation of operations.[9]

Third, is there "forceful evidence" the parties intended to exclude this issue from arbitration? The Court finds that Borden has introduced no evidence of prior intent to exclude the dispute from the arbitration process.

The Court declines to reach the merits of the dispute as raised by certain contentions of the parties. The union references specific contract provisions to support its claim of a duty of good faith. Borden also argues that the record contains no evidence of bad faith in its dealings with Local 1034. These matters reach the merits of the dispute, and are best left to the arbitrator. The Supreme Court has declared that even if claims appear frivolous or without basis in the collective bargaining agreement, the court is not to rule on the underlying merits of the dispute. *See AT & T Technologies,* 475 U.S. at 649–50, 106 S.Ct. at 1418–19.

In addition, Borden's argument that upholding the right to arbitrate this issue would destroy the final and binding nature of arbitration is without merit. The previous arbitration concerned the possible violation of the subcontracting clause by the transfer out of all work from the bargaining unit to other plants. The arbitrator

specifically limited his decision to the subcontracting clause, and left undecided possible violations of other parts of the contract.

I hold that the issue of good faith limits on the transfer out of all the work in the bargaining unit should be decided by the arbitrator.

## III. CONCLUSION

In view of the presumption of arbitrability, the broad arbitration clause, and the lack of specific exclusions, the Court finds arbitrable the issue of limits on Borden's right to transfer all bargaining unit work to another location. The Court will enter an order denying plaintiff's motion for declaratory judgment on the issue of arbitrability.

---

**8.** The Court in *E.M. Diagnostic* also found that a dispute is within the scope of the arbitration clause if it "is within the zone of interests that have received protection under the collective bargaining agreement." 812 F.2d at 95. Other clauses in the Doxsee/Local 1034 contract establish limits on the transfer of work out of the bargaining unit. Article III, paragraph 4 requires the company to offer employment opportunities if its operations are moved. Article VIII, paragraph 6 mandates notification to the union of any substantial reduction in the work-

force. Limits on the transfer out of all bargaining unit work is within the zone of interests protected by the collective bargaining agreement.

**9.** Article XIII, paragraph 2 does exclude discipline or discharge of employees for strike-related activities from the grievance and arbitration process. No other provision limits the scope of the grievance arbitration clause or provides for exclusions.