**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

GENERAL TEAMSTERS, CHAUFFEURS,
WAREHOUSEMEN AND HELPERS LOCAL
UNION NO. 697, a/w International
Brotherhood of Teamsters, AFL-
CIO,

<u>Plaintiff-Appellee,</u>

No. 95-1082

v.

PREMIER CONCRETE PRODUCTS,
INCORPORATED,
<u>Defendant-Appellant.</u>

Appeal from the United States District Court
for the Northern District of West Virginia, at Wheeling.
Frederick P. Stamp, Jr., Chief District Judge.
(CA-93-141-5)

Argued: October 31, 1995

Decided: March 29, 1996

Before HAMILTON, MICHAEL, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Ronald L. Mason, EMENS, KEGLER, BROWN, HILL
& RITTER, Columbus, Ohio, for Appellant. Robert Alan Eberle,
JUBELIRER, PASS & INTRIERI, P.C., Pittsburgh, Pennsylvania, for

Appellee. **ON BRIEF:** Christopher J. Weber, EMENS, KEGLER, BROWN, HILL & RITTER, Columbus, Ohio; Robert J. D'Anniballe, Jr., ALPERT, D'ANNIBALLE & VISNIC, Weirton, West Virginia, for Appellant.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

This is an appeal from the district court's order compelling arbitration between General Teamsters, Chauffeurs, Warehousemen and Helpers Local Union No. 697, a/w International Brotherhood of Teamsters, AFL-CIO ("Local 697" or the "union") and Premier Concrete Products, Inc. ("Premier" or the "company"). The district court determined that the dispute between the parties was over whether Premier subcontracted work in violation of the collective bargaining agreement. The court held that the dispute was arbitrable. Premier appeals these conclusions, and we affirm.

I.

The appellant, Premier, distributes and sells concrete products. From April 1990 until mid-April 1992, Premier produced ready-mix concrete at plants in Bellaire and Mingo Junction, Ohio. The company's ready-mix division employed approximately 19 employees, most of whom were ready-mix drivers. They were represented by the appellee, Local 697.

Premier and Local 697 were parties to a collective bargaining agreement in effect from May 1, 1990 to April 30, 1993. The bargaining unit included Premier's ready-mix division employees. The agreement contained a grievance procedure as the exclusive dispute resolution mechanism for all disputes. According to § 4.2, the griev-

2

ance procedure applied whenever "differences [arose] between the employer and the union as to the meaning and application of any of the provisions of this agreement or [whenever] differences [arose] over matters not specifically referred to in this agreement." The final step of the grievance procedure was binding arbitration.

In April 1992, while the collective bargaining agreement was in effect, Premier laid off all employees in the ready-mix bargaining unit. Those employees have remained laid off since then. The company says that it closed the ready-mix operation because of its inability to compete.

In June 1992 some ready-mix employees notified Ray Bauer, Local 697 secretary-treasurer/business agent, that some Premier ready-mix trucks were being operated with Weirton Ice & Coal Supply Company signs placed over the Premier markings. They also told Bauer that the trucks were providing concrete to jobs which had been supplied with concrete produced by Premier's ready-mix employees prior to the April 1992 layoffs. Premier claims that it had simply assigned its existing contracts to Weirton Ice & Coal. Premier also maintains that it did not lease any of its equipment to Weirton Ice & Coal.

Bauer (on behalf of the union) filed a grievance with Premier, alleging a violation of § 8.14 of the collective bargaining agreement. The grievance stated:

> The Company is in violation of Article 8, Section 8.14, by subcontracting work through Weirton Ice & Coal Company which has always been performed by bargaining unit employees in the Ready Mix Division, at a time when the Company's trucks were not in use and when available and qualified employees were on lay-off. This violation is continuing.

Section 8.14 of the collective bargaining agreement provides:

> No outside trucking will be hired until either of the two (2) following conditions exist: 1. The employer's suitable and available trucks are in use. 2. All available and qualified employees are working.

3

Premier refused to arbitrate. On July 20, 1993, the union filed this action to compel arbitration. Both the union and Premier filed motions for summary judgment, and the district court granted the union's motion, compelling the parties to arbitrate. Premier appeals.

II.

We review the district court's grant of summary judgment de novo. Cumberland Typographical Union 244 v. The Times & Alleganian Co., 943 F.2d 401, 407 (4th Cir. 1991). A dispute is arbitrable if the parties contracted to submit the grievance to arbitration. United Steel Workers of America v. Warrior & Gulf Navigation Co. , 363 U.S. 574, 582 (1960). Whether a dispute is arbitrable is a question of contract interpretation for the court. Id. The role of the court is "confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract." United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 568 (1960). The court may not consider the merits of the grievance while determining whether a dispute is arbitrable. Id. Even claims that the court might deem nonmeritorious must be submitted to arbitration if the parties have agreed that the dispute was arbitrable. Id. at 567-68. Finally, if the contract contains an arbitration clause, a presumption of arbitrability arises. The court should not decline to order arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Warrior & Gulf Navigation, 363 U.S. at 582-83.

Under these principles, the district court correctly concluded that the subcontracting grievance was arbitrable. The collective bargaining agreement contains a broad arbitration clause:

> Should differences arise between the employer and the union as to the meaning and application of any of the provisions of this agreement or should differences arise over matters not specifically referred to in this agreement, there shall be no suspension of work on account of such differences, but an earnest effort shall be made to settle such differences immediately:

* * *

4

> In the event a cause is deadlocked . . . this case shall be referred to the American Arbitration Association for settlement. The decision resulting from the arbitration will be final and binding upon the parties. . . .

Local 697 expressly alleged that Premier violated § 8.14 of the collective bargaining agreement by subcontracting with Weirton Ice & Coal while ready-mix employees were laid off. We think the allegation is a "difference[ ] between the employer and the union as to the meaning and application of [one] of the provisions of the" collective bargaining agreement. Thus, we cannot say "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Warrior & Gulf Navigation , 363 U.S. at 582-83.

Premier insists, however, that to prevail on summary judgment, the union must produce some evidence that the company was actually subcontracting. We disagree. Local 697's grievance made the specific allegation that Premier was subcontracting work to Weirton Ice & Coal, in violation of the collective bargaining agreement. Whether Premier was actually subcontracting is a question addressing the merits of the grievance. In making arbitrability determinations, "[t]he courts . . . have no business weighing the merits of the grievance." American Mfg., 363 U.S. at 568.

Next, Premier argues that we cannot take the union's asserted grievance at face value, but instead we must unveil the "underlying dispute" and determine whether it is arbitrable. Premier relies on International Union United Automobile, Aerospace and Agric. Implement Workers of America, UAW v. Lester Eng'g Co., 718 F.2d 818 (6th Cir. 1983); Retail, Wholesale and Dep't Store Union Local 1034 AFL-CIO v. Doxsee Food Corp., 650 F.Supp. 861 (D. Del. 1986); and District No. 8, Int'l Ass'n of Machinists and Aerospace Workers, AFL-CIO v. Boyar-Schultz Corp., No. 85C7442, Slip Op. (N.D. Ill. April 16, 1986). In each of these cases, the union sought to enjoin the employer from closing its operation pending arbitration. Premier argues that in each case the union grievance was purportedly over subcontracting, but nonetheless each court first identified "the underlying dispute." See Lester, 718 F.2d at 823. These courts did determine that the underlying dispute was in fact over the employer's decision to close an operation, a nonarbitrable subject. Thus, Premier

5

claims that the underlying dispute in this case is over Premier's decision to shut down the ready-mix operation, a dispute that is not arbitrable.

We disagree with Premier's analysis for two reasons. First, we are "confined to ascertaining whether the party seeking arbitration is making a claim which on its face is" arbitrable under the collective bargaining agreement. American Mfg., 363 U.S. at 568 (emphasis added). Here, the grievance alleges on its face that Premier violated § 8.14 of the collective bargaining agreement.

Second, the cases (from other circuits) on which Premier relies are inapposite. To begin with, each case involved an attempt to enjoin the employer from closing an on-going operation. Here, we simply have an action to compel arbitration. Moreover, the cases are factually distinguishable. In Lester and Doxsee, the union alleged that the plant closing violated the no-subcontracting provision of the collective bargaining agreement. Lester, 718 F.2d at 819; Doxsee, 650 F. Supp. at 863. Thus, on its face, the union grievance was over the plant closing. In Boyar-Schultz, the union's claim on its face was that a proposed plant shutdown would violate the collective bargaining agreement. The agreement did not have a no-subcontracting provision. Boyar-Schultz at 2. By contrast, in the present case the union neither seeks to enjoin the closing of an ongoing operation nor alleges anything about Premier's decision to close the ready-mix operation. Rather, the grievance states that Premier's alleged subcontracting -- discovered a month after the operation's closing -- violated the subcontracting provision of the collective bargaining agreement.

Here, the district court was correct to review the language of the grievance and to determine that "it alleges a violation which is within the scope of matters subject to arbitration under the [collective bargaining] agreement." Accordingly, we reject Premier's arguments and affirm the judgment of the district court.

AFFIRMED

6