**NURSING HOME & HOSPITAL UNION NO. 434 AFL–CIO–LDIU, by Louis MACKSON, Trustee Ad Litem**

v.

**SKY VUE TERRACE, INC., Appellant.**

No. 84–3457.

United States Court of Appeals, Third Circuit.

Argued March 12, 1985.

Decided April 10, 1985.

Larry J. Rappoport (Argued), Hayes and Feege, P.C., Allentown, Pa., for appellant.

Richard E. Gordon (Argued), Howard Grossinger, Pittsburgh, Pa., for appellees.

Before HUNTER, GARTH and VAN DUSEN, Circuit Judges.

### OPINION OF THE COURT

JAMES HUNTER III, Circuit Judge.

This appeal is from an order permanently enjoining Sky Vue Terrace, Inc. ("Sky Vue") from distributing funds derived from the sale of its business assets, pending arbitration with Nursing Home & Hospital Union No. 434, AFL–CIO, LDIU ("Local 434") over alleged obligations of Sky Vue under the parties' collective bargaining agreement. Jurisdiction is asserted under section 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a) (1982). Because we find that the district court's order is consistent with the federal labor policy favoring arbitration of labor disputes, we affirm.

### I.

Sky Vue and Local 434 were parties to a collective bargaining agreement covering all licensed practical nurses, nurses' aides, orderlies, laundry employees, kitchen employees, housekeeping employees, and maintenance employees at Sky Vue's nursing home. The agreement was effective from February 11, 1982 through February

11, 1985, and contained, *inter alia,* a grievance and arbitration procedure. This procedure applied to "any difference of opinion, controversy or dispute between the parties hereto relating to any matter of wages, hours or working conditions, or any dispute between the parties involving interpretation or application of any provisions of this agreement." App. at 151. The collective bargaining agreement also provided that it would "be binding upon the parties hereto and upon their respective successors and assigns and legal representatives." App. at 158.

On April 2, 1984, Sky Vue consummated a sale of all its physical assets, including the nursing home facility, to Health Group Care Centers, Inc. ("Health Group"). On that date, Health Group instructed all employees of Sky Vue represented by Local 434 to punch their timecards, and then immediately offered employment to 26 of those employees, 24 of whom accepted the offer. As part of the offer, Health Group advised these employees that their wages and benefits would be lower than those they enjoyed under Sky Vue's employment, and that Health Group would not recognize the collective bargaining agreement with Local 434. Health Group then informed all other Sky Vue employees that they would not be retained.

Immediately after the sale, Sky Vue began to dissolve its corporate status. At the time of the district court action, Sky Vue had distributed to its individual stockholders approximately two-thirds of the $1,300,-000 it received from the sale of its assets. Sky Vue is holding the remaining monies in an interest-bearing account.

On April 18, 1984, Local 434 filed a complaint in the United States District Court for the Western District of Pennsylvania seeking an order compelling Sky Vue to arbitrate, pursuant to the collective bargaining agreement, all disputes concerning the sale of the nursing home to Health Group. The union also sought an order enjoining, both preliminarily and permanently, any further steps in the sale of the nursing home, and any further distribution or dissolution of Sky Vue's assets pending completion of the arbitration process. Although Local 434 raised many issues in its Complaint, the crucial issue concerned Sky Vue's alleged breach of the successors and assigns clause of the collective bargaining agreement by its failure to obligate Health Group, through the sales agreement, to adopt the collective bargaining agreement.

After a full hearing on the merits, the district court granted part of the requested relief. The court ordered Sky Vue to proceed to arbitration on the issues raised by Local 434, and enjoined the further distribution of Sky Vue's assets and funds pending resolution of the arbitration process.[1] The district court found that the disputes between Sky Vue and Local 434 were all subject to the arbitration clause of the parties' collective bargaining agreement, and that an injunction on any further distribution of assets was necessary to ensure that Sky Vue maintained sufficient assets to satisfy any damages award should the union prevail at arbitration. Sky Vue now appeals from this order.

## II.

Underlying the issues in this action is a conflict between two fundamental policies embodied in our national labor laws: 1) the policy against judicial interference in labor disputes, 29 U.S.C. §§ 101–15 (1982); and 2) the promotion of the peaceful resolution of labor disputes through voluntary arbitration, 29 U.S.C. § 172(d)(1982). These policies conflict where, as in this case, intervention of the federal courts is sought to ensure that one party, through its actions, does not frustrate the dispute resolution process voluntarily agreed upon by both parties to the collective bargaining agreement. *See e.g., Boys Markets, Inc. v. Retail Clerks Union, Local 770,* 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970).

---

1. The injunction did not apply to the payment of debts arising in the ordinary course of business. App. at 212.

The district court's order consists of two parts: 1) the order compelling arbitration of the underlying disputes; and 2) the order enjoining Sky Vue from further distributing and dissolving its corporate assets pending completion of the arbitral process. If the underlying disputes are arbitrable, the first part of the order is clearly within the power of the federal courts. *See, e.g., Buffalo Forge Co. v. United Steelworkers of America,* 428 U.S. 397, 405, 96 S.Ct. 3141, 3146, 49 L.Ed.2d 1022 (1976); *Gateway Coal Co. v. United Mine Workers,* 414 U.S. 368, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974). The second part of the order, however, must be analyzed in light of the Norris-LaGuardia Act, 29 U.S.C. §§ 101–15 (1982), which broadly prohibits federal courts form issuing injunctions in labor disputes. On appeal, Sky Vue attacks the validity of both prongs of the district court's order.

### A. *The Order Compelling Arbitration*

The law does not compel a party to submit a dispute to arbitration unless he has contractually agreed to do so. *Gateway Coal Co. v. United Mine Workers,* 414 U.S. 368, 374, 94 S.Ct. 629, 635, 38 L.Ed.2d 583 (1974). Thus, the issue of arbitrability is "a matter to be determined by the courts on the basis of the contract entered into by the parties." *Atkinson v. Sinclair Refining Co.,* 370 U.S. 238, 241, 82 S.Ct. 1318, 1320, 8 L.Ed.2d 462 (1962); *Eberle Tanning Co. v. Section 63L,* 682 F.2d 430, 433 (3d Cir.1982). Because of the strong federal policy in favor of arbitration, however, "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960); *H.C. Lawton, Jr., Inc.*

*v. Truck Drivers, Chauffeurs and Helpers Local Union No. 384,* 755 F.2d 324, 328 (3d Cir.1985).

In the instant case, Sky Vue seemingly disputes that the core subject-matter of Local 434's grievances—Sky Vue's duties under the successors and assigns clause of the parties' collective bargaining agreement—falls within the broad grievance and arbitration clause of that agreement. This argument is meritless, for the contractual definition of grievance includes "any dispute between the parties involving interpretation or application of any provisions of this Agreement," and thus explicitly encompasses the present dispute over the meaning of the agreement's successors and assigns clause. App. at 151, 158.

Sky Vue also argues that Local 434's grievances are not subject to the arbitration process because Local 434 did not comply with the specific time limits for filing grievances under the agreement. Even assuming that Sky Vue's argument has merit,[2] the law is clear that matters of procedural arbitrability, such as time limits, are to be left for the arbitrator once the court determines that the · parties have agreed in the contract to submit the subject-matter of the dispute to arbitration. *See, e.g., John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 557–58, 84 S.Ct. 909, 918–19, 11 L.Ed.2d 898 (1964). Because we find that the arbitration clause of the parties' agreement does cover the dispute in this case, we will affirm that part of the district court's order that compelled Sky Vue to arbitrate the union's grievances. *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed. 2d 1409 (1980).

### B. *The Order Enjoining Distribution of Assets*

By broadly prohibiting federal court injunctions in labor disputes, the Nor-

---

**2.** Sky Vue argues that the first step of the grievance procedure obligated Local 434 to submit any grievances to Sky Vue's administrator within 7 days of the sale. The grievance and arbitration clause, however, allows an employee an initial time period of 30 days from the griev-

ance's occurrence in which to present his grievance and initiate the three-step grievance process. App. at 151. Because the grievances did not arise until the date of the sale, Local 434 did present its grievances within this initial 30-day period.

ris-LaGuardia Act, 29 U.S.C. §§ 101–15 (1982), seeks to prevent the federal courts, *inter alia*, from interfering with economic struggles between employeès and their employers. The Supreme Court created a narrow exception to this general prohibition, however, where the involvement of the federal courts is necessary to further another fundamental federal labor policy—that of encouraging and promoting the voluntary resolution of labor disputes through arbitration. *Boys Markets, Inc. v. Retail Clerks Union, Local 770*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970) (upholding an order enjoining a strike pending resolution of an arbitrable dispute through the contractual arbitration process). The Court emphasized the narrow application of this exception in *Buffalo Forge Co. v. United Steelworkers of America*, 428 U.S. 397, 96 S.Ct. 3141, 49 L.Ed.2d 1022 (1976), where it stated that the justification for a *Boys Markets* injunction is not to remedy a breach of the collective bargaining agreement, but instead solely to enforce the promise to arbitrate. Thus, a *Boys Markets* injunction is appropriate only where necessary to prevent conduct that threatens or frustrates the arbitral process agreed to by the parties. *See, e.g., United Steelworkers of America v. Fort Pitt Steel Casting*, 598 F.2d 1273, 1282 (3d Cir.1979).

■ Although both *Boys Markets* and *Buffalo Forge* arose in the context of objectionable union conduct, numerous courts have found that the rationale of those cases is equally applicable to cases where a union seeks to enjoin employer conduct. *See, e.g., Local Lodge No. 1266 v. Panoramic Corp.*, 668 F.2d 276 (7th Cir.1981); *United Steelworkers of America v. Fort Pitt Steel Casting*, 598 F.2d 1273 (3d Cir. 1979); *Drivers, Chauffeurs, Etc. v. Akers Motor Lines*, 582 F.2d 1336 (4th Cir.1978); *Lever Bros. Co. v. International Chemi-*

*cal Workers Local 217*, 554 F.2d 115 (4th Cir.1976). To establish that an order enjoining employer conduct is necessary to ensure that the arbitral process will not be frustrated, the party seeking the injunction must prove not only that the underlying disputes are arbitrable, but that the traditional requirements of injunctive relief— probability of success on the merits, irreparable injury, and a balance of hardships— support the award. *See e.g., Local Lodge No. 1266 v. Panoramic Corp.*, 668 F.2d 276 (7th Cir.1981).

■ In the instant case, the district court, after examining the requirements for a *Boys Markets* injunction, properly found that an injunction prohibiting the further distribution of Sky Vue's assets was necessary to ensure that an arbitral award in the union's favor was more than a "hollow formality." *United Steelworkers of America v. Fort Pitt Steel Casting*, 598 F.2d 1273, 1282 (3d Cir.1979). First, and as discussed above, the underlying dispute— whether Sky Vue breached the successors and assigns clause of the collective bargaining agreement—is clearly arbitrable under the grievance and arbitration clause of the agreement. Second, Local 434 has shown a probability of success on the merits of its claim against Sky Vue sufficient to support the injunction in this case.[3] If the union is successful in demonstrating that Health Group is a successor to Sky Vue as that term is defined in the collective bargaining agreement, then the union's claim that the agreement obligated Sky Vue to force Health Group to adopt the collective bargaining agreement may have merit.

Third, the union has satisfied its burden of showing irreparable harm if the court were to deny the injunction. Sky Vue no

---

**3.** Sky Vue concedes in its brief, and we agree, that to meet its burden of showing a probability of success on the merits in the context of a *Boys Markets* injunction, the union need only show that the position it takes is "sufficiently sound to prevent the arbitration from being a futile endeavor." *Local Lodge No. 1266 v. Panoramic Corp.*, 668 F.2d 276, 284 (7th Cir.1981); *Lever*

*Bros. Co. v. International Chemical Workers Local 217*, 554 F.2d 115, 120 (4th Cir.1976). To hold the union to a stricter standard of proof would intrude significantly on the arbitrator's function, and result in the type of judicial preemption of the arbitral process condemned by the Court in *Buffalo Forge*, 428 U.S. 397, 410–11, 96 S.Ct. 3141, 3148–49, 49 L.Ed.2d 1022 (1976).

longer controls the nursing home, nor can it at this time legally force Health Group to rehire the discharged employees or to adopt the collective bargaining agreement. Thus, even if the union succeeds at arbitration against Sky Vue, it is likely to receive only an award of money damages to compensate the employees for Sky Vue's breach of the collective bargaining agreement. A complete dissolution and distribution of Sky Vue's assets prior to the arbitration, however, would render such an award meaningless, essentially frustrate the arbitration process, and effectively allow Sky Vue to escape its contractual promise to arbitrate disputes over interpretation of the collective bargaining agreement. Finally, the balance of hardships on both sides favors the issuance of the injunction. The injunction allows Sky Vue to pay its ordinary debts, but prohibits it from completely dissipating, through payments to shareholders or otherwise, the corporate assets. When balanced against the possible harm to the former Sky Vue employees, the freezing of Sky Vue's assets does not constitute undue hardship. We will affirm, therefore, the second part of the district court's order.

### III.

Although we recognize the strong federal policy against federal court involvement in labor disputes, the injunction in this case furthers the federal policy favoring voluntary resolution of labor disputes, and prevents the employer from escaping its promise to arbitrate and from frustrating the arbitral process through dissolution of its assets. Accordingly, we will affirm the judgment of the district court in its entirety.