WILLIAM ROSENSTEIN &
SONS, Petitioner,

v.

TEAMSTERS LOCAL UNION 229, Affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America, Respondents.

Civ. No. 89–0395.

United States District Court,
M.D. Pennsylvania.

June 20, 1989.

---

Joseph Rydzewski, Scranton, Pa., for petitioner.

Robert D. Mariani, Mariani & Greco, Scranton, Pa., for respondents.

## MEMORANDUM AND ORDER

CONABOY, District Judge.

### I

This action was commenced by William Rosenstein & Sons (hereinafter Rosenstein) against Teamsters Local Union 229 affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, (hereinafter Teamsters) in the Court of Common Pleas of Lackawanna County and thereafter removed by the Teamsters, pursuant to 28 U.S.C. § 1441, to this Court. Subsequent to the removal to this Court, the Teamsters filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The motion has been briefed and is ripe for disposition. Because we find the motion to have merit and because we find two fatal flaws in the opposition argument of Rosenstein, the motion will be granted.

### II

In initiating the action in the Court of Common Pleas of Lackawanna County, Rosenstein sought to bar arbitration on the issue of the dismissal of one of its employees. Rosenstein does not argue that the issue of dismissal is not arbitrable, but argues rather that the matter as it presently stands is not arbitrable because the Teamsters failed to follow certain procedures outlined in the contract before attempting to bring the issue of dismissal to arbitration. The Teamsters argue that the contract in existence between Rosenstein and the Teamsters provides that the question of arbitrability itself is a matter which is to be submitted to and decided by the arbitrator. In addition, the Teamsters factually dispute the assertion by Rosenstein that the Teamsters failed to follow the steps outlined in the contract which precede a demand for arbitration.

Both parties acknowledge the existence of a binding collective bargaining agreement which was effective from on or about October 22, 1987 through October 22, 1990 and both acknowledge that the provisions regarding grievance procedures and arbitration are binding on the parties in this case.

Indeed, both parties cite not only the same provisions of the collective bargaining agreement but the same legal authorities in making their arguments in this case.

Rosenstein argues that the Teamsters failed to follow initial steps provided in the grievance procedure before attempting to bring the dismissal matter to arbitration; and he argues further that the requirement to follow the initial steps of the grievance procedure is a procedural matter which denies jurisdiction in any arbitrator to hear the charge of dismissal. The Teamsters argue first that the matter of following or not following the steps in the grievance procedure is a substantive argument and, secondly, that even if the failure to follow the steps in the grievance procedure is considered procedural, that the contract itself provides that all such matters shall be submitted to arbitration.

Article XXX makes provisions for grievance and arbitration procedures and pertinent to this action provides as follows:

*Section 1*

A grievance is hereby jointly defined to be any controversy, complaint, misunderstanding or dispute between the Union and the Employer, or between an employee or group of employees and the Employer. The parties agree that such grievance shall be resolved in the following manner:

(a) If an employee, a group of employees or the Union has a grievance, it shall be presented by the Union steward to the Company in writing within seven (7) calendar days after the occurrence of the facts that led to the grievance; otherwise, the grievance shall be deemed untimely.

(b) A representative designated by the Company shall meet with the Union steward on the grievance and shall give a written answer to the grievance within five (5) calendar days after such meeting. (c) If the meeting referred to in Subsection (b) above, does not result in a resolution of the grievance, within ten (10) days after the Company gave or should have given its written answer to the grievance as required in Subsection (b) above, the grievance shall be discussed by an officer of the Company and the Union Business Agent and Union Steward.

*Section 2*

If the parties are unable to resolve the grievance in accordance with the procedures outlined in Section 1 above, the Union may demand arbitration of such grievance by making such demand to the American Arbitration Association with a copy to the Employer, within twenty (20) calendar days of the date of the discussion between an officer of the Company and the Union Business Agent and Union Steward outlined in Subsection (c) of Section 1.

*Section 3*

The arbitrator shall not have the authority to amend or modify this Agreement or establish new terms or conditions under this Agreement. A question raised by either party as to the arbitrability of a grievance shall be subject to arbitration and, if deemed arbitrable, the issue may be decided at such hearing. Both parties agree to accept the decision of the arbitrator as final and binding. If the Company fails to comply with the award of the arbitrator, the Union has the right to take all legal and economic action to enforce compliance.

### III

Both parties cite us to the decision of United States Supreme Court in *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). Reference to that opinion is indeed helpful and provides significant guidelines in resolving an issue such as that before us in this case.

In *Wiley*, the Union sought to compel John Wiley & Sons to arbitrate the issue of whether it was bound to the collective bargaining agreement of Interscience, Inc., a corporation which had merged with Wiley. Wiley opposed arbitration on several grounds. Part of its opposition was that the Union had failed to follow Steps 1 and 2 of the grievance procedure set out in the contract and that it thus had no duty to arbitrate since a duty to arbitrate came about only in Step 3. The Court described Wiley's opposition as follows:

Wiley's final objection to arbitration raises the question of so-called "procedural arbitrability". The Interscience agreement provides for arbitration as the third stage of the grievance procedure. "Step 1" provides for a "conference between the affected employee, a Union steward and the employer, officer or exempt supervisory person in charge of his department". In "Step 2" the grievance is submitted to "a conference between an officer of the employer, or the employer's representative designated for that purpose, the Union Shop Committee and/or a representative of the Union". Arbitration is reached under "Step 3" "in the event that the grievance shall not have been resolved or settled in 'Step 2'. Wiley argues that since Steps 1 and 2 have not been followed, and since the duty to arbitrate arises only in Step 3, it has not duty to arbitrate this dispute. Specifically, Wiley urges that the question of whether 'procedural' conditions to arbitration have been met, must be decided by the Court and not the arbitrator."

The Supreme Court rejected Wiley's contention as follows:

Once it is determined, as we have, that the parties are obligated to submit the subject matter of a dispute to arbitration, "procedural" questions which grow out of the dispute and bear on its final disposition, should be left to the arbitrator.

*Wiley* thus confirmed the Federal Courts' recognition of the central role of arbitration in affecting National Labor policy and the deferential treatment accorded

to the procedures agreed upon in labor contracts. Referring to *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 and *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 the Court pointed out that arbitration had long been recognized as the "substitute for industrial strife" and as "part and parcel of the collective bargaining process itself".[1]

### IV

In view of the foregoing, we disagree with the contention of Rosenstein that the Supreme Court's reasoning in *Wiley* would require us to find that the instant matter is not subject to arbitration and we disagree with Rosenstein's interpretation of Article XXX of its agreement with the Teamsters regarding the authority of the arbitrator in a given case.

*Wiley* does in fact require us to look to the existing contract to determine the length and breadth of arbitration in a given case and reiterates that the right to arbitrate and the conditions of arbitration are matters that are to be determined by the clear wording of the labor contract under consideration. We do not agree that *Wiley* would require a finding in this case as to whether a matter is "substantively arbitrable", before finding that the entire matter should be submitted to arbitration. We make this determination by looking to the clear wording of the contract in question and find that in Article XXX, Section 3 provides, among other things "a question raised by either party as to the arbitrability of a grievance shall be subject to arbitration and, if deemed arbitrable, the issue may be decided at such hearing." Here the clear intent of the parties is to submit issues such as those presented in this case to the arbitrator for initial determination. There is obviously a dispute between the parties whether Steps 1 and 2 of Article XXX were complied with, but that clearly

is an issue that should be submitted to the arbitrator under the terms of this contract. There is no need for any preliminary determination by this Court, therefore, since the parties have contractually decided how to resolve this issue by the terms of their own collective bargaining agreement.

Accordingly, the motion to dismiss will be granted.

---

1. The philosophy of Wiley & Sons, Inc. cited herein has repeatedly been followed in the Third Circuit. See *Chauffeurs, Teamsters & Helpers et al. v. Stroehmann*, 625 F.2d 1092 (3d Cir.1980); *Nursing Home and Hospital Union, No. 434 v. Sky Vue Terrace, Inc.*, 759 F.2d 1094 (3d Cir.1985); and *Becton Dickinson & Co. v. District 65, United Autoworkers*, 799 F.2d 57 (3d Cir.1986).