Stratford Firefighters' Local No. 998, which is affiliated with International Association of Fire Fighters, AFL-CIO, seeks a temporary injunction mandating the Town of Stratford and its Acting Town Manager, Mark Barnhart, to reopen a firehouse which was recently closed and to reinstate firefighters who were recently laid off or demoted. The union wants this relief until the State Board of Mediation and Arbitration decides a grievance which the union filed concerning the town's closing of the firehouse. After considering the facts and relevant legal principles, the court has concluded that it should not issue an injunction.
The facts which led to this dispute are summarized as follows. The Stratford Town Council adopted an operating budget for fiscal year 1992-1993 which reduced the budget of the fire department by $700,000.00. The reduction was necessary because the town is in very poor financial condition as is illustrated by its bond rating. Of the 169 towns in the state, Stratford is among the nine towns which have the lowest bond ratings. In order to comply with the budgetary constraints, the town manager directed the fire chief to close Fire Station Two, which is located on Huntington Road, Stratford. As a consequence of the chief's implementing the directive, ten fire fighters were laid off and four lieutenants were demoted.
Local 998 is the bargaining agent for uniformed and investigatory positions within the fire department. The union and the town are parties to a collective bargaining agreement. Pursuant to the provisions of the agreement, Local 998 filed with the Connecticut State Board of Mediation and Arbitration a grievance concerning the closing of the firehouse and the reduction in personnel. At the same time, the union filed with this court an application for a temporary injunction. Prior to the court hearing, the town closed the firehouse, laid off ten firefighters, and demoted four lieutenants. The union now wants to return to the status quo as it existed prior to the closing.
When the union has the opportunity to present its case before the State Board of Mediation and Arbitration, the union will claim the town is barred by Article VII of the collective bargaining agreement from closing a firehouse and thereby reducing the CT Page 5658 number of employees on duty. This contractual provision designates the number of persons who shall be on duty throughout the entire department during each shift and further designates the number of persons who shall be on duty at each firehouse. If the union is correct in its interpretation of Article VII, the State Board of Mediation and Arbitration may conclude the town has committed a prohibited labor practice in violation of General Statutes 7-470(a). Should the board determine that the town has committed a prohibited practice, the board may direct the town to reinstate the firefighters with or without back pay. General Statutes 7-471(4)(B)(ii). The town interprets Article VII differently. It argues it has the right to close a firehouse without bargaining with the union. Thus, it claims it has not committed a prohibited practice.
Pending the outcome of the arbitration process, the union wants this court to order the parties to return to the same status as existed prior to the closing of the firehouse. The union claims this return is necessary to secure the health and safety of the firefighters. The town, denying that its actions have significantly increased the risk of injury or death to firefighters, claims the court should not issue an injunction.
Each side presented evidence on the safety issue. Before discussing this evidence, the court will discuss the circumstances under which it may issue an injunction in a labor dispute.
The power of this court to issue injunctions in labor disputes is severely limited by General Statutes 31-112 through 31-121. "The federal counterpart to these statutes, known as the Norris-LaGuardia Act; 29 U.S.C. § 101 through 115; has been interpreted as taking `federal courts out of the labor injunction business except in . . . very limited circumstances . . . .' Our statutes have been similarly interpreted." Emhart Industries Inc. v. Amalgamated Local Union 376, U.A.W., 190 Conn. 371, 392 (1983) (internal citations omitted.) General Statutes 31-115 provides that the court must find the plaintiff has satisfied its burden of proving each of five factual predicates before the court may issue an injunction. These criteria are as follows:
 "(a) [t]hat unlawful acts have been threatened and will be committed by a person or persons unless such person or persons are restrained therefrom, but no injunction or temporary restraining order shall be issued on account of any threat or unlawful act except against the person or persons, association or organization making the threat or committing the unlawful act or actually authorizing or ratifying the same after actual knowledge thereof; (b) that substantial and irreparable injury to the complainant or his property will follow; (c) that as to each item of relief granted greater injury would be inflicted CT Page 5659 upon the complainant by the denial of relief than would be inflicted upon the defendants by the granting of relief; (d) that the complainant has no adequate remedy at law; and (e) that the public officers charged with the duty to protect the complainant's property are unable or unwilling to furnish adequate protection."
Before this court may grant an injunction, it must first find that "unlawful acts have been threatened and will be committed . . . ." General Statutes 31-115(a). The union has failed to prove this prerequisite to injunctive relief. The defendants have not committed unlawful acts and have not threatened to do so. The breach of a contract is not an unlawful act encompassed by an anti-injunction statute. Brotherhood of Railroad Trainmen, Local Lodge No. 721 v. Central of Georgia Railway Company,229 F.2d 901, 904 (5th Cir. 1956). This finding would end the court's analysis but for an exception to the general prohibition against labor injunctions.
The United States Supreme Court in Boys Markets v. Retail Clerks Union Local 770, 398 U.S. 235, 90 S.Ct. 1583 (1970), created an exception to the Norris-LaGuardia Act's prohibition against injunctions. Since our "Little Norris-LaGuardia Act" is patterned after the federal act, Kenmike Theatre, Inc. v. Moving Picture Operators, 139 Conn. 95, 97 (1952), it is logical to apply the Boys Markets exception to our act. This exception is summarized in the following quotation from a Federal District Court case:
 "The Norris-LaGuardia Act, 29 U.S.C. § 101-15, broadly prohibits federal court injunctions in labor disputes, thus preventing the federal courts from interfering with economic struggles between employees and their employers. The Supreme Court has created an exception to this general prohibition, however, where the involvement of the federal courts is necessary to encourage and promote the voluntary resolution of labor disputes through arbitration. See Boys Markets v. Retail Clerks Union Local 770, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970). A Boys Markets injunction against employer conduct is appropriate only in narrow circumstances. First, the underlying dispute must be subject to mandatory arbitration under the collective bargaining agreement. Buffalo Forge Co. v. United Steelworkers, 428 U.S. 397, 96 S.Ct. 3141, 49 L.Ed.2d 1022 (1976). Second, the employer conduct the union seeks to enjoin must threaten or frustrate the arbitral process agreed to by the parties. Nursing Home Hospital Union No. 434 v. Sky Vue Terrace, 759 F.2d 1094, 1098 (3d Cir. 1985); United Steelworkers v. Fort Pitt Steel Casting, 598 F.2d 1273, 1982 (3d Cir. 1979). Finally, the union must satisfy the traditional requirements for injunctive CT Page 5660 relief by demonstrating a probability of success on the merits, irreparable injury if the injunction is denied, and that the balance of hardships favor the injunction. Sky Vue, 759 F.2d at 1098."
Retail, Wholesale and Department Store Union Local 1034, AFL — CIO v. Doxsee Food Corporation, 650 F. Sup. 861, 863 (D.Del. 1986).
The purpose of the exception to the anti-injunction statutes is to preserve the arbitral process. If an injunction is needed to preserve the process, the court may consider issuing an injunction provided the other necessary prerequisites to injunctive relief are present. Otherwise, it should not do so. The evidence relating to the firefighters safety does not show that the defendants' conduct threatens or frustrates the arbitral process. The evidence also fails to show irreparable injury or that the balance of hardships favors the injunction. Each of these criteria must be established by the union before this court may issue an injunction in aid of the arbitral process.
The testimony relating to the firefighters' safety is summarized as follows. Those who testified on behalf of the union emphasized that the time needed to respond to fires in the northwestern area of town has increased as a result of the town's closing the Huntington firehouse. The increase may result in firefighters facing larger fires than they otherwise would have faced. Dr. Denis Onieal, an educator and deputy chief of the Jersey City Fire Department, explained how personnel and equipment are commonly assigned to a fire scene and also reviewed the Stratford procedures. He opined that the Stratford firefighters will now be placed in extreme danger.
The witnesses presented by the defendants expressed a different viewpoint. George H. Paul, a consultant who was formerly the Fire Commissioner and Chief of the Boston Fire Department, opined that the town's action in closing the firehouse and reducing the number of persons on duty will have little impact on the firefighters' safety as long as the commander in charge of the fire scene exercises proper judgment. He based his opinion, in part, on the fact that the northwestern area of the town contains residential homes of two to two and one-half stories on large lots. According to Mr. Paul, if the commander of the fire scene decides the circumstances are such that a defensive mode of firefighting should be adopted, the Stratford firefighters can pursue such a tactic without endangering themselves.
Acting Fire Chief Roger C. Macey testified that the recent changes will not create safety problems as long as proper procedures are followed. Assistant Chief Richard Cullen similarly testified CT Page 5661 that he does not anticipate any impact on firefighter safety as long as the lieutenants or commanders on the fire scenes follow proper procedures. The commander of a fire scene in Stratford has complete discretion to summon additional equipment and firefighters and to decide on the tactics to be employed in fighting the fire. The evidence shows that the officers and commanders have the skills and knowledge to properly exercise this discretion.
Ten firefighters testified. Many of them have obtained educational decrees and state certifications. They have shown that the Stratford firefighters are an experienced corps. Recently, they received running orders describing the manner in which they are to respond to fires now that Fire House Two is closed. The evidence shows that the firefighters have the qualifications and training to properly execute the new orders.
The court finds the opinions rendered by Acting Chief Macey and Deputy Chief Cullen to be credible and worthy of acceptance. While the experts from New Jersey and Massachusetts have excellent credentials, they lack a detailed knowledge of the Stratford fire department.
The totality of the union's evidence can best be described as showing a generalized fear of the risk of injury to firefighters. Generalized fears and concerns of the risks which befall a firefighter are not sufficient to establish a substantial probability that the alleged harm will occur. International Association of Firefighters, Local 786 v. Serrani, 26 Conn. App. 610, 616 (1992). While the union has shown that its members are engaged in a dangerous occupation, it has not established the necessary prerequisites to injunctive relief.
This dispute basically concerns the loss of jobs and demotions. The proper forum for the union's grievance is the State Board of Mediation and Arbitration. The board can grant meaningful relief in the form of reinstatement and back pay. The ability of the board to grant this type of relief has not been affected by the defendants' conduct.
In summary, the court finds that it is barred by Connecticut's little Norris-LaGuardia Act; General Statutes 31-112 through31-121; from granting an injunction. The union failed to show an exception to the general prohibition against labor injunctions exists under the circumstances of this case. Moreover, the union has failed to establish the traditional requirements for injunctive relief. Accordingly, Local 998's application for an injunction is denied. CT Page 5662