NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-3966
_____

NEWSPAPER, NEWSPRINT, MAGAZINE AND FILM DELIVERY DRIVERS,
HELPERS AND HANDLERS, INTERNATIONAL BROTHERHOOD OF
TEAMSTERS, LOCAL UNION NO. 211

v.

PG PUBLISHING CO, INC., doing business as PITTSBURGH POST-GAZETTE,
Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 2-19-cv-01472)
District Judge: Honorable J. Nicholas Ranjan
_____

Argued March 3, 2020
_____

Before: GREENAWAY, JR., SHWARTZ, and MATEY *Circuit Judges*.

(Opinion Filed: March 25, 2020)

Terrence H. Murphy [*ARGUED*]
Brian M. Hentosz
Littler Mendelson
625 Liberty Avenue
EQT Plaza, 26th Floor
Pittsburgh, PA 15222
      *Attorneys for Appellant*

Patrick K. Lemon [*ARGUED*]
Joseph J. Pass
Jubelirer Pass & Intrieri
219 Fort Pitt Boulevard

1st Floor
Pittsburgh, PA 15222

*Attorneys for Appellee*

_____

OPINION[*]
_____

GREENAWAY, JR., *Circuit Judge*.

The labor/management divide has a long history in the annals of American business. As a result, there is a very particular process necessary for either fixture in the divide to extricate itself from the other. Specificity with regard to that extrication, though, is not just advisable it is mandatory. This case arises from the District Court's grant of a preliminary injunction enjoining and restraining the employer-party— Appellant-Defendant PG Publishing Co., Inc., d/b/a Pittsburgh Post-Gazette (the "Post-Gazette")—to a collective bargaining agreement ("CBA") with the union-party— Appellee-Plaintiff Newspaper, Newsprint, Magazine and Film Delivery Drivers, Helpers, and Handlers, International Brotherhood of Teamsters, Local Union No. 211 (the "Union")—from refusing to maintain the status quo under an expired and disavowed CBA while a grievance procedure occurred. Of primary importance, over two months before the CBA was set to expire, the Post-Gazette, a newspaper company, notified the Union, via letter, of its intent to disavow the CBA after expiration. Because this letter achieved the requisite specificity necessary for extrication, and indeed manifested a clear,

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

particularized disavowal of the CBA, there was no implied-in-fact contract between the parties after the CBA expired. *See Luden's Inc. v. Local Union No. 6 of the Bakery, Confectionary and Tobacco Workers' Int'l Union of Am.,* 28 F.3d 347, 360–61 (3d Cir. 1994) (holding that an implied-in-fact CBA will not continue to exist after the CBA terminates if there was a "clear, particularized intent to disavow [the CBA's] terms."). As such, it was error for the District Court to find an implied-in-fact contract existed and to issue a preliminary injunction maintaining the status quo regarding the CBA. For the reasons discussed below, we will reverse the District Court's Order granting the preliminary injunction and remand this case with instructions to vacate the preliminary injunction.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Factual Background

The Post-Gazette and the Union entered into a CBA that commenced on November 7, 2014 and was set to expire on March 31, 2017. As explained by the District Court:

> The CBA . . . establishes an extensive dispute resolution procedure that governs any "dispute over an alleged violation of this agreement." This procedure includes the option for either side to initiate arbitration to finally resolve the dispute.
>
> Significantly, the dispute resolution provision also states that, with limited exceptions not relevant to this case, the parties must maintain the status quo while the parties attempt to resolve a grievance.

3

*Newspaper, Newsprint, Magazine & Film Delivery Drivers, Helpers, & Handlers v. PG Publ'g Co.*, No. 2:19-CV-1472-NR, 2019 WL 6338466, at \*1 (W.D. Pa. Nov. 27, 2019) (internal citations omitted).

On January 9, 2017, more than two months before the CBA was set to expire, the Post-Gazette sent the Union a letter (the "Letter") stating in part:

> This letter is to notify [the Union] of the desire of [the Post-Gazette] to negotiate a new contract and that the [Post-Gazette] intends to terminate its [CBA] with [the Union] effective March 31, 2017. The current agreement expires on March 31, 2017. At that time, all contractual obligations of the current [CBA] shall expire.
>
> The [Post-Gazette] will continue to observe all established wages, hours and terms and conditions of employment as required by law, except those recognized by law as strictly contractual, after the [CBA] expires. With respect to arbitration, the [Post-Gazette] will decide its obligation to arbitrate grievances on a case-by-case basis.

A143.

After the CBA expired, the parties began bargaining for a new agreement. A new agreement was not reached, and by October 9, 2019, the Post-Gazette sent the Union an "Effects Bargaining Summary" by email.[1] By mid-October 2019, the Post-Gazette stated its intention to implement the changes it had proposed. Certain changes to work schedules, health benefits, and wages, then began to take place. According to an affidavit

---

[1] In short, this was a summary of the issues that the parties discussed at a prior effects bargaining meeting. For example, the Union proposed "1 weeks' pay for each completed year of service with a maximum of 20 weeks' severance pay" and the Post-Gazette responded by rejecting "the Union's proposal as an economic concession it was not willing to make. The [Post-Gazette] believes six (6) weeks' severance pay for a layoff by seniority is fair." A119.

4

submitted by the Union, after the expiration of the CBA, the Post-Gazette continued to comply with the dues check-off and union security provisions of the CBA.

## B.     Procedural Background

On November 4, 2019, the Union filed a grievance asserting violations of the CBA and requesting that until the grievance was resolved the status quo be maintained per Section I(10) of the CBA.

On November 12, 2019, the Union filed a suit in federal court alleging a violation of Section 301(a) of the Labor Management Relations Act ("LMRA"), seeking to enjoin the Post-Gazette from any interruption of the status quo until the November 4th grievance was resolved and to enforce the CBA's grievance procedure.  The Union then moved for a preliminary injunction on November 13, 2019, to "maintain the status quo regarding health care coverage, manpower, shift scheduling, wages and layoffs as required contractually by the CBA pending the outcome of the contractual grievance process," and the Post-Gazette countered with a motion to dismiss on November 22, 2019.  A130–131.

On November 27, 2019, the District Court granted the preliminary injunction— "enjoin[ing] and restrain[ing] [the Post-Gazette] from refusing to maintain the status quo under the CBA regarding healthcare coverage, manpower, shift scheduling, wages and layoffs pending the outcome of the contractual grievance process"—and denied the motion to dismiss.  A4–5.  The District Court found that while the CBA had expired, the parties were operating under an implied-in-fact contract under *Luden's* because there was no clear, particularized disavowal of the CBA.  The District Court also found an implied-in-fact contract existed because "the Post-Gazette . . . continued to comply with two other

5

purely contractual obligations: the dues check-off and union security provisions."

*Newspaper, Newsprint, Magazine*, 2019 WL 6338466, at *6.

On December 2, 2019, the Post-Gazette moved to stay the District Court's decision pending an appeal to this Court. On December 27, 2019, the District Court denied the motion and ordered the Post-Gazette to comply with the injunction order "[a]bsent a stay by the Third Circuit." A194. On December 20, 2019, the Post-Gazette filed a timely notice of appeal in this Court regarding the District Court's denial of its motion to stay the injunction pending appeal. On January 9, 2020, the Post-Gazette filed a motion to expedite, which was granted in part.[2]

On January 13, 2020, the Post-Gazette filed a supplemental notice in support of its motion to stay pending appeal: "to inform the Court that the United States District Court for the Western District of Pennsylvania – Judge J. Nicholas Ranjan will hold a show cause hearing on March 6, 2020 at 10:30 a.m. concerning whether the Post-Gazette violated the district court's labor injunction order and whether civil contempt penalties shall be issued."[3] Appellate Dkt. 18. On January 15, 2020, the Post-Gazette filed a second supplemental notice in support of its motion to stay pending appeal: "to inform the Court that the United States District Court for the Western District of Pennsylvania – Judge J. Nicholas Ranjan has ordered the Post-Gazette to immediately comply with the

---

[2] The only relief not granted in the motion to expedite was the Post-Gazette's proposed briefing schedule. The motions panel imposed its own briefing schedule. Appellate Dkt. 17.

[3] That hearing was later rescheduled for May 18, 2020. Appellate Dkt. 46.

district court's injunction order." Appellate Dkt. 19 (emphasis omitted). On March 3, 2020, we heard oral argument in this case.

## II. JURISDICTION AND STANDARD OF REVIEW

The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331, and we have jurisdiction pursuant to 28 U.S.C. § 1292(a)(1) because the appeal stems from a preliminary injunction. "We review an order granting a preliminary injunction for abuse of discretion, but we review the district court's underlying factual determinations under a clearly erroneous standard and consider the [district] court's determinations on questions of law *de novo*." *Acierno v. New Castle County*., 40 F.3d 645, 652 (3d Cir. 1994) (citation omitted); *see also Greater Phila. Chamber of Commerce v. City of Philadelphia*, 949 F.3d 116, 133–34 (3d Cir. 2020).

## III. ANALYSIS

The District Court's grant of a preliminary injunction was improper. First, the District Court erred as a matter of law by finding that an implied-in-fact contract existed under *Luden's,* 28 F.3d 347. The Post-Gazette's Letter was a clear, particularized disavowal of the CBA.[4] *Luden's*, 28 F.3d at 360–61, 364. Therefore, the issuance of an

---

[4] Judge Shwartz would conclude that the language in the January 2017 letter is ambiguous and thus not a clear disavowal of the CBA. She reads the language, "With respect to arbitration, the Company will decide its obligation to arbitrate grievances on a case-by-case basis," App. 143, as susceptible of two reasonable interpretations. On the one hand, the sentence could be read as a carveout or an exception to the sentence that precedes it, i.e., that the Company will "observe all . . . conditions of employment as required by law, except those recognized by law as strictly contractual." App. 143. Arbitration is a matter that is strictly contractual, *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 201 (1991), so the next sentence beginning, "With respect to arbitration,"

injunction to maintain the status quo provision from a contract that was no longer in existence was improper. Second, the District Court erred as matter of law by finding that an implied-in-fact contract existed due to the Post-Gazette's adherence to statutory obligations under the National Labor Relations Act ("NLRA"). *See, e.g.*, *Lincoln Lutheran of Racine*, 362 N.L.R.B. 1655, 1655 (2015) ("[A]n employer's obligation to check off union dues continues after expiration of a collective-bargaining agreement that establishes such an arrangement"). *But see Valley Hosp. Med. Ctr., Inc.*, 368 N.L.R.B.

---

signals that different rules will apply to arbitration. Specifically, while the Company is obliged by law to arbitrate disputes based upon events that predate the expiration of the CBA, *Litton*, 501 U.S. at 205; *Ind. & Mich. Elec. Co.*, 284 N.L.R.B. 53, 59-60 (1987), the sentence uses forward-looking language ("will decide its obligation to arbitrate") and thereby captures a willingness to arbitrate disputes that may arise after contract expiration, thus beyond what the law requires. This language therefore could reasonably convey that: (a) the Company may arbitrate matters that arise in the future; (b) including those disputes based upon events that occurred after the CBA expired; and (c) including matters that it is not required by law to arbitrate. This view was confirmed at oral argument. There, the Company conceded that the sentence contemplates arbitrating grievances that arise post-expiration, Oral Arg. Tr. 3:35-4:12, which the law does not require the Company to arbitrate.

On the other hand, the language could be read as a disavowal of the mutually-agreed-upon grievance and arbitration process set forth in § 10 of the CBA. That is, one could read the language that the Company, and only the Company, will decide its obligation to arbitrate a grievance as inconsistent with the mutual agreement to arbitrate set forth in the CBA. Moreover, the entire letter could reasonably convey that: (a) the contractual obligations will expire on March 31, 2017; (b) the Company will comply only with obligations imposed by law, and not those imposed solely by the CBA; and (c) as arbitration is a matter of contract, and the Company's language announces that it will unilaterally decide its obligation to arbitrate on a case-by-case basis, the Company is no longer proceeding to arbitration as a result of a mutual contract.

Because the language is susceptible two interpretations, Judge Shwartz concludes that it is ambiguous and thus could not constitute an "express or clearly implicit disavowal," *Luden's Inc. v. Local Union No. 6*, 28 F.3d 347, 356 (3d Cir. 1994) (footnote omitted), and repudiation of the grievance and arbitration provision of the CBA.

8

139 (Dec. 16, 2019) (overruling, after the District Court issued the injunction in this case, *Lincoln Lutheran*'s finding that an employer must honor dues check-off after a CBA expires because "[i]n sum, we find that a dues-checkoff provision properly belongs to the limited category of mandatory bargaining subjects that are exclusively created by the contract and are enforceable through Section 8(a)(5) of the Act only for the duration of the contractual obligation created by the parties").[5]

---

[5] Though the absence of an implied-in-fact contract is a dispositive issue in this case, we note a few other issues here. First, we note that the District Court's injunction was impermissible because it was overbroad in preventing the Post-Gazette from making changes related to employment and wages. The only possible irreparable harm arising from the Post-Gazette's actions related to healthcare benefits. *See, e.g.*, *United Steelworkers of Am. v. Fort Pitt Steel Casting*, 598 F.2d 1273, 1280 (3d Cir. 1979) (observing that a worker's denial of adequate medical care due to a lack of health insurance would constitute "substantial and irreparable injury.") (citation omitted). Second, there is no question that a district court has jurisdiction to hear a contract dispute between a union and an employer per Section 301 of the Labor Management Relations Act. 29 U.S.C. § 185. That said, generally, federal courts do not have jurisdiction to issue a restraining order or a temporary permanent injunction in a case involving or growing out of a labor dispute. *See* 29 U.S.C. § 101. An exception to this general prohibition on federal courts' jurisdiction over labor disputes is found in *Boys Markets, Inc. v. Retail Clerks Union*, 398 U.S. 235 (1970). *See, e.g.*, *Nursing Home & Hosp. Union v. Sky Vue Terrace, Inc.*, 759 F.2d 1094, 1098 (3d Cir. 1985) (explaining that courts may issue injunctions in labor disputes under *Boys Markets* in narrow circumstances where "the involvement of the federal courts is necessary to further another fundamental federal labor policy—that of encouraging and promoting the voluntary resolution of labor disputes through arbitration"). Further, *Boys Markets* has been extended to cases in which a union seeks to enjoin employer conduct. *See, e.g.*, *id.* ("To establish that an order enjoining employer conduct is necessary to ensure that the arbitral process will not be frustrated, the party seeking the injunction must prove not only that the underlying disputes are arbitrable, but that the traditional requirements of injunctive relief . . . support the award.").

**A.      The CBA Expired, and Due to the Post-Gazette's Proper Disavowal of the CBA Prior to Its Expiration, No Implied-In-Fact Contract Existed**

The District Court was incorrect in finding an implied-in-fact contract. The Post-Gazette's Letter to the Union manifested a clear, particularized disavowal and repudiation of the parties' CBA under *Luden's*, such that maintaining a status quo provision from the disavowed CBA was impermissible. 28 F.3d at 360–61, 364. *Luden's* stands for the proposition that CBAs can be disavowed such that implied-in-fact contracts cannot be found to exist after expiration based on a party's actions. *Id.* Such a disavowal is dependent on whether a party manifests a clear, particularized intent to disavow or repudiate the CBA.[6] *Id.*; *see also Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 159–60 & n.15 (3d Cir. 1999) (concluding that an employer's oral statement that the CBA "was not in effect" sufficiently disavowed the existence of an implied-in-fact CBA under *Luden's*). Here, the District Court found the Post-Gazette did not manifest a particularized disavowal of the CBA, we disagree.

"A contract provision is ambiguous if it is susceptible to two reasonable interpretations. Ambiguity arises when language is obscure in meaning through indefiniteness of expression or has a double meaning." *Sköld v. Galderma Labs., L.P.*, 917 F.3d 186, 192 (3d Cir. 2019) (quotation marks and internal citation omitted). But

---

[6] *See also Luden's*, 28 F.3d at 355–56 (explaining implied-in-fact contracts and noting "general principles of contract law teach us that when a contract lapses but the parties . . . continue to act as if they are performing under a contract, the material terms of the prior contract will survive intact unless either one of the parties clearly and manifestly indicates, through words or through conduct, that it no longer wishes to continue to be bound thereby[.]").

there is no ambiguity "if the court can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of the language in general, its meaning depends[.]" *Id.* (citation omitted).

The language of the Letter is clear, particularized, and unambiguous. The first part of the Letter is clear: "The current [CBA] expires on March 31, 2017. At that time, all contractual obligations of the current [CBA] shall expire." A143. There is only one way to read that statement: after the expiration date, the CBA would cease to exist, as would all contractual obligations.

The next part of the Letter is likewise unambiguous: "[The Post-Gazette] will continue to observe all established wages, hours and terms and conditions of employment *as required by law*, *except those recognized by law as strictly contractual*, after the [CBA] expires." A143 (emphasis added). This too is clear: after the CBA expired, the Post-Gazette would adhere to any conditions that are required by law and would not observe contractual obligations. This is also consistent with the prior statement, which expressed that no contractual obligations would survive the expiration of the CBA. The letter continues, in part: "With respect to arbitration, the [Post-Gazette] will decide its obligation to arbitrate grievances on a case-by-case basis." A143. That sentence is also clear: The Post-Gazette stated that post-expiration of the CBA, whether something shall be arbitrated will be at the Post-Gazette's discretion.[7]

---

[7] Indeed, as expressed at oral argument, the "discretion" that the Post-Gazette would employ, would be to arbitrate cases it would be legally obligated to arbitrate. Oral Argument at 55:52–57:56, https://www2.ca3.uscourts.gov/oralargument/audio/19-3966NewspaperNewsprintMagazinevPGPublishingCo.mp3.

11

Read as a whole, the Letter thus delineates a logical change of conditions: the CBA would expire, after expiration no contractual obligations would survive, that which was required by law would be adhered to, and whether the Post-Gazette would arbitrate a grievance would be determined by the Post-Gazette based on its understanding of what it is obligated to arbitrate. On its face, the Letter was thus a clear, particularized disavowal of the CBA. Importantly, at oral argument, the Union conceded the Letter was not confusing, and was unable to articulate how the Letter was ambiguous, proffering instead that it could have been more well written or that it created a carveout. Oral Argument at 37:54–40:21, 41:00–45:26, 49:25–49:52, https://www2.ca3.uscourts.gov/oralargument/ audio/19-3966NewspaperNewsprintMagazinevPGPublishingCo.mp3. But, as explained, it was well crafted, made no carveout, and was a clear, particularized disavowal.

However, the District Court found the Letter was "far from a 'clear and particularized' disavowal," focusing its attention on the sentence regarding arbitration:

> the Post-Gazette incongruously states that "the Company will decide its obligation to arbitrate grievances"—a contractual requirement under the CBA—"on a case-by-case basis." If the Post-Gazette were truly disavowing all contractual obligations under the CBA, *it would have simply said it would not be bound by the arbitration provision in the CBA under any circumstances.*

*Newspaper*, *Newsprint, Magazine*, 2019 WL 6338466, at \*6 (emphasis added).

The District Court's reasoning is flawed. Indeed, though the District Court suggested the Post-Gazette could have written that phrase differently, or even, purportedly, better, as shown above, that is not the correct question. The question is whether the Letter as a whole was unambiguous, and whether it was a clear,

12

particularized disavowal of the CBA.  Yet, the District Court engaged in no discussion of ambiguity, focusing instead on what it perceived to be better language, and, as will be discussed below, actions that were statutorily required.

First, the letter is clear and the sentences preceding the case-by-case arbitration phrase explicitly make it clear that all contractual obligations would cease to exist after the CBA expired.  Thus, the Letter, read as a whole, unambiguously states that what was contractually required while the CBA existed would no longer be required after the CBA expired.  Making the obligation to arbitrate grievances on case-by-case basis discretionary post-expiration is not incongruous with the earlier and clear statement that contractual obligations ended after March 31, 2017.  If anything, it reiterated the Post-Gazette's disavowal of its post-expiration contractual obligations by making something that was mandatory under the CBA discretionary post-CBA.  But more importantly, the District Court's conclusion that the Post-Gazette should have in toto stated "it would not be bound by the arbitration provision in the CBA under any circumstances," is legally erroneous.  *Newspaper, Newsprint, Magazine*, 2019 WL 6338466, at \*6.

The NLRB has explained that a wholesale repudiation of an arbitration provision in a CBA prior to expiration is not permissible.  *See Ind. & Mich. Elec. Co*., 284 N.L.R.B. 53, 58–60 (1987) (finding that a company's announcement to the union, upon expiration of the contracts, that it would not arbitrate *any* grievances was a violation of Section 8(a)(5) of the NLRA—"The Respondent did not limit its refusal to arbitrate to a particular grievance or class of grievances.  Accordingly, we find that the Respondent's entire course of conduct amounted to a wholesale repudiation of its contractual obligation

13

to arbitrate."); *see also Hilton-Davis Chem. Co*, 185 N.L.R.B. 241, 242–43 (1970)

(observing that unilateral attempts to change grievance procedures are unacceptable, and

questioning whether the arbitration agreement survived the expiration of the CBA).

Thus, in the Letter, the Post-Gazette could not have used the language the District

Court suggested, and it was incorrect for the District Court to conclude that the failure to

include a wholesale repudiation evidenced that a disavowal had not occurred. Further,

whether the Post-Gazette could have chosen better words—as the Union suggests[8]—is

not the standard here. We are only tasked with asking if the Letter was ambiguous, and

as explained, we find that it was not.[9] And so, the Letter as a whole was an appropriate

disavowal and repudiation of the CBA.

---

[8] The Union argues that the Post-Gazette could have adhered to *Indiana & Michigan Electric* by stating it would "arbitrate only cases that the law requires" as opposed to saying it would "decide its obligation to arbitrate grievances on a case-by-case basis," but we see no material difference in the language. Appellee Br. 13. Taking something that was mandatory under the CBA and making it discretionary post-CBA is already a change showing the CBA no longer would apply, and choosing to arbitrate cases on a case-by-case basis implies that cases that are required to be arbitrated will be arbitrated. Further, the Union provided no case law to support its proffered words rather than those of the Post-Gazette.

[9] We note here, too, the general proposition that a duty to arbitrate does not wholesale continue to exist after the expiration of a CBA. *Litton Fin. Printing Div. v. N.L.R.B.*, 501 U.S. 190, 208–09 (1991); *see also Luden's*, 28 F.3d at 361 n.24 (noting that "[i]n *Litton* the Supreme Court enumerated three types of disputes which, albeit flaring up post-expiration, could arise under the [lapsed] contract" and listing those three types of disputes) (internal citation and quotation marks omitted); *Ind. & Mich. Elec.*, 284 N.L.R.B. at 60 (noting that after a CBA expires "parties are bound to arbitrate . . . disputes if they are over rights 'arising under' the expired contract, and the contract does not negate expressly or by clear implication the presumption favoring post-expiration arbitration of such disputes."). It is clear from the facts of this case that the grievance procedure brought by the Union does not "arise under" the expired CBA because: the grievance does not involve an occurrence arising before expiration but rather events *after*

14

### B. The Post-Gazette's Adherence to Statutory Requirements Did Not Negate Its Disavowal of the CBA[10]

The District Court also found that an implied-in-fact contract continued to exist post expiration because the Post-Gazette continued to honor dues check-off and union security provisions. *See Newspaper, Newsprint, Magazine*, 2019 WL 6338466, at *6 ("What's more, after it sent the letter, the Post-Gazette does not dispute that it continued to comply with two other purely contractual obligations: the dues check-off and union security provisions."). The District Court found that the Post-Gazette's compliance with those provisions suggested that the Post-Gazette was acting in accordance with the CBA such that there was no disavowal. Again, the District Court was incorrect.

First, when the Letter was sent, dues check-off was required to occur even after a CBA expired. *See Lincoln Lutheran of Racine*, 362 N.L.R.B. at 1655 ("[A]n employer's obligation to check off union dues continues after expiration of a collective-bargaining agreement that establishes such an arrangement").[11] The District Court thus erred in faulting the Post-Gazette for adhering to something the NLRB required it to observe.

---

the expiration, there was a disavowal, and the CBA did not survive the disavowal. *See Luden's*, 28 F.3d at 361 n.24.

[10] Judge Shwartz joins this portion of the opinion and views the errors noted herein as sufficient to vacate the preliminary injunction since it was based on a misapprehension of the law at the time the injunction was issued.

[11] Though the Union notes that NLRB law has since changed, the change occurred *after* the District Court issued the preliminary injunction. *See Valley Hosp. Med. Ctr., Inc.*, 368 N.L.R.B. 139 (Dec. 16, 2019) (overruling, after the District Court issued the injunction in this case, *Lincoln Lutheran*'s finding that an employer must honor dues check-off after a CBA expires). As such, the change in the law is not relevant to the present case's analysis.

Second, accepting the Post-Gazette also continued to observe the union security provision of the CBA, a contractual provision, such adherence is not sufficient to find, by itself, that the Post-Gazette continued to perform under the disavowed CBA. *See Newspaper, Newsprint, Magazine*, 2019 WL 6338466, at \*6 (underscoring the District Court's reliance on the adherence to contract interpretation found in *Luden's*, and finding, in part, that the Post-Gazette's adherence to the union security provision permitted the terms of the agreement to survive). As such, the Post-Gazette's actions post-expiration do not evidence the continuation of the CBA.[12]

## IV. CONCLUSION

For the reasons set forth above, we will reverse the District Court's November 27, 2019 Order and remand this case with instructions to vacate the injunction.

---

[12] We need not address the Post-Gazette's arguments regarding the continued viability of *Luden's*.

16